**Ninth Circuit Court of Appeals No. 23-30032**
**District Court No. CR-21-115-BLG-SPW**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**–vs–**

**TYSON DANIEL LINGELBACH,**

**Defendant-Appellant.**

---

**OPENNING BRIEF OF DEFENDANT-APPELLANT**

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA,

BILLINGS DIVISION
HONORABLE SUSAN P. WATTERS
UNITED STATES DISTRICT JUDGE, PRESIDING

RACHEL JULAGAY
Federal Defender, District of Montana
**\*STEVEN C. BABCOCK**
Assistant Federal Defender
Federal Defenders of Montana
2702 Montana Avenue, Suite 101
Billings, MT 59101
Telephone: (406) 259-2459
            *Counsel for Defendant-Appellant

SUBMITTED: JUNE 20, 2023

# **Table of Contents**

TABLE OF CONTENTS……………………………………………………..ii

TABLE OF AUTHORITIES…………………………………………….…...iv

I.       Statement of Jurisdiction ........................................................................8

    A.    Subject Matter Jurisdiction in the District Court...................................8

    B.    Jurisdiction in the Court of Appeals ......................................................8

II.      Statement of the Issue ............................................................................9

    A.    Nature of the Case ..................................................................................9

   1.    Statement Regarding Oral Argument .....................................................9

    B.    Statement of Bail Status ........................................................................9

III.    Statement of Facts .................................................................................10

IV.    Summary of Argument ..........................................................................11

V.      Argument ...............................................................................................12

    A.    Standard of Review and Reviewability .................................................12

    B.    Argument ...............................................................................................13

   1.    The District Court misstated facts, tainting its analysis. ......................14

   2.    *United States v. Orman*, 486 F.3d 1170 (9th Cir. 2007). .....................15

3. *Orman* is out-of-step with the Sipreme Court's decisions and this Court's decisions……………………………………………………..17

4. The district court's extension of *Orman*'s holding implicates the Second Amendment.......................................................................20

C. There was no suggestion Lingelbach was armed AND dangerous.....22

D. The Fourth Amendment intrusion was not adequately supported by "the interests of crime prevention and investigation." ......................26

VI. Conclusion ...........................................................................31

**[The Presentence Investigation Report is filed separately under seal.]**

## <u>Table of Authorities</u>

*Bates v. Chesterfield County, Va.*,
    216 F.3d 367 (4th Cir.2000) ............................................................... 29

*Carter v. United States*,
    729 F.2d 935 (8th Cir.1984) ............................................................... 30

*District of Columbia v. Heller*
    554 U.S. 570 (2008).......................................................................21

*Florida v. J.L.*,
    529 U.S. 266 (2000) ................................................................... 19, 28

*Florida v. Bostick*,
    501 U.S. 429 (1991) ......................................................................... 16

*LaLonde v. County of Riverside*,
    204 F.3d 947 (9th Cir. 2000) ............................................................. 31

*Maryland v. Buie*,
    494 U.S. 325 (1990) ......................................................................... 25

*Michigan v. Long*,
    463 U.S. 1032 (1983) ................................................................. 11, 22

*Minnesota v. Dickerson*,
    508 U.S. 366 (1993) ................................................................. 25, 27

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
    142 S.Ct. 2111, U.S. (2022) ............................................................. 20

*Northrup v. City of Toledo Police Department*,
    785 F.3d 1128 (6th Cir. 2015) ........................................................... 25

*Ornelas v. United States*,
    517 U.S. 690 (1996) ......................................................................... 12

*Ramirez v. City of Buena Park*,
    560 F.3d 1012 (9th Cir. 2009) ........................................................... 24

*Sibron v. New York*,
    392 U.S. at 64, 88 S.Ct. 1889 .....................................................27, 30

iv

*Terry v. Ohio*,
392 U.S. 1 (1968) ...................................................... 11, 13, 16-19, 22-24, 26-30

*Thomas v. Dillard*,
818 F.3d 864 (9th Cir. 2016) ............................................................... 18

*Thompson v. Louisiana*,
469 U.S. 17 (1984) ...................................................................... 13

*United States v. $109, 179 in U.S. Currency*,
228 F.3d 1080 (9th Cir.2000) ............................................................ 19

*United States v. Arvizu*,
534 US. 266 (2002) ..................................................................13, 29

*United States v. Black*,
707 F.3d 531 (4th Cir. 2013) ...................................................... 17, 21

*United States v. Flatter*,
456 F.3d 1154 (9th Cir. 2006) .......................................................... 24

*United States v. Gooch*,
6 F.3d 673 (9th Cir. 1993) .............................................................. 25

*United States v. Grigg*,
498 F.3d 1070 (9th Cir. 2007) ................................................... 26-28, 31

*United States v. Hensley*,
469 U.S. 221 (1985) .................................................................... 28

*United States v. Holmes*,
376 F.3d 270 (4th Cir. 2004) ........................................................... 25

*United States v. Hughes*,
517 F.3d 1013 (8th Cir. 2008) ..................................................... 27-31

*United States v. I.E.V.*,
705 F.3d 430 (9th Cir. 2012) ...................................................... 19, 25

*United States v. King*,
990 F.2d 1552 (10th Cir. 1993) ........................................................ 21

*United States v. Miles*
247 F.3d 1009, 1012 (9th Cir. 2001) ....................................................19

*United States v. Moran*,
   503 F.3d 1134 (10th Cir. 2007) .......................................................... 28

*United States v. Morgan,*
   743 F.2d 1158 (6th Cir 1984) .............................................................26

*United States v. Neely*,
   564 F.3d 346 (4th Cir. 2009) .............................................................. 25

*United States v. Orman*,
   486 F.3d 1170 (9th Cir. 2007) ............................................. 14-17, 19-21, 23, 25

*United States v. Roggeman*,
   279 F.3d 573 (8th Cir.2002) .............................................................. 29

*United States v. Tatman*,
   615 F.Supp.2d 664 (S.D. Ohio 2008) .................................................. 26

*United States v. Thomas*,
   863 F.2d 622 (9th Cir. 1988) ......................................................... 18, 25

*United States v. Westberry*,
   2020 WL 2079268 *5 (D.N.J. 2020) .................................................. 25

*United States v. Wheat*,
   278 F.3d 722 (8th Cir.2001) .............................................................. 28

*Ybarra v. Illinois*,
   444 U.S. 85 (1979) ........................................................................... 25

## Federal Statutes

18 U.S.C. §§ 3231 and 3565 (b) ............................................................ 8

28 U.S.C. § 1291 ................................................................................. 8

42 U.S.C. § 1983 ................................................................................. 18

554 U.S. 570 (2008) ............................................................................ 21

## U.S. Constitutional Amendments

Second Amendment of the U.S. Constitution ................................... 20-21

Fourth Amendment of the U.S. Constitution . 9, 11-13, 16, 19-22, 24, 26-27, 30-31

## **Rules**

Federal Rule of Appellate Procedure 25 ................................................................. 34

Federal Rule of Appellate Procedure 34 ................................................................. 9

Ninth Circuit Rule 28-2.6 ...................................................................................... 32

Ninth Circuit Rule 32 ............................................................................................ 33

Ninth Circuit Court of Appeals No. 23-30032
District Court No. CR 21-115-BLG-SPW

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff -Appellee,

-vs-

TYSON DANIEL LINGELBACH,

Defendant-Appellant.

---

OPENNING BRIEF OF DEFENDANT-APPELLANT

---

## I.     Statement of Jurisdiction

### A.     Subject Matter Jurisdiction in the District Court

The United States District Court for the District of Montana, Billings

Division had jurisdiction under 18 U.S.C. §§ 3231 and 3565(b).  The District Court

entered an opinion and order denying the motion on August 30, 2022.  (ER-37).

### B.     Jurisdiction in the Court of Appeals

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.  Lingelbach

entered a plea agreement with the Government, with the consent of the Court, he

reserved his right to appeal the denial of his motion to suppress.  (ER-21).  The

District Court accepted the plea agreement at the time of sentencing.  Final

judgement was entered on February 15, 2023.  (ER-5).  Lingelbach filed a timely

notice of appeal on February 17, 2023. (ER-162).

## II.     <u>Statement of the Issue</u>

**Whether the District Court erred in concluding that law enforcement, given the totality of the circumstances, could conduct a protective search of Lingelbach's vehicle?**

## A.     Nature of the Case

This is a direct appeal by Lingelbach from the denial of his Motion to

Suppress.  The search of Lingelbach's vehicle was an illegal protective sweep in

violation of the Fourth Amendment of the United States Constitution.

### 1.     Statement Regarding Oral Argument

Under Federal Rule of Appellate Procedure 34(a), Lingelbach advises the

Court of his view that oral argument is necessary because the facts and legal

arguments can be explained in further detail.

## B.     Statement of Bail Status

Lingelbach was released from custody and resides in Laurel, Montana.

### III.   **Statement of Facts**

At approximately 2 a.m. on April 16, 2021, Billings Police Officer Hilde was dispatched to a noise complaint at 1112 Princeton Avenue in Billings, MT. The unidentified caller stated that an individual in a pickup truck with a large grill guard was playing loud music.  Officer Hilde arrived on the scene and located the previously described pickup truck.  Officer Hilde did not activate the overhead lights on his patrol car.

Officer Hilde approached the suspect vehicle and asked the lone occupant (Lingelbach) what was going on.  As he approached, he saw Lingelbach sitting in the driver's seat and noticed a long gun sitting next to Lingelbach.  Out of concern for officer safety, Officer Hilde directed Lingelbach to exit the vehicle and to not reach for the gun.  At the suppression hearing Officer Hilde testified that he could not deny that Lingelbach was removing items from his lap before he exited the vehicle.  (ER-66).  Additionally, the District Court described the movement by Lingelbach as a nondescript reaching movement, and Lingelbach testified that he was moving pliers, cigarettes, and a cell phone from his lap before he exited the vehicle.  (ER-81).

After being directed to exit his vehicle Lingelbach was handcuffed and placed in the back of Officer Hilde's patrol car.  At about this time Officer Stroble arrived on the scene to assist Officer Hilde.  After calling dispatch it was

determined that pickup's license plates did not match.  The officers also found outstanding warrants for Lingelbach but after approximately 20 minutes decided not to effectuate an arrest on the warrants.

Approximately 8 minutes into the stop Officer Hilde decided to seize the firearm and unload it.  Lingelbach was still handcuffed and detained in Officer Hilde's vehicle during the search and seizure of the firearm.  Lingelbach repeatedly objected to the search of the vehicle.  In justifying the search of the vehicle Officer Hilde stated that he was comfortable with the seizure of the firearm because it was in plain view – making it safe, good faith observation.  However, during the suppression hearing Officer Hilde testified that he did not discover that the shotgun had a shortened barrel until after he seized the firearm from the pickup truck. (ER-71).

## IV.   Summary of Argument

The protective sweep conducted by law enforcement was an unconstitutional search in violation of the Fourth Amendment.  Law enforcement may conduct a protective search of a vehicle for weapons in the course of a *Terry* stop where they have reasonable suspicion "that the suspect is dangerous and the suspect may gain immediate control of weapons."  *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). The District Court identified the key issue was "whether a reasonably prudent

person in the circumstances would believe that his safety is in danger." *Id*. at 150 (ER-33).

The District Court failed to establish the key issue – dangerousness. Instead, the District Court stated that the defense was being too "formulaic", and that the mere presence of the firearm authorized the protective sweep conducted by law enforcement. (ER-35–36). The standard for a protective sweep as established in *Long*, does not support the District Court's holding that the mere presence of a firearm makes the suspect dangerous.

In short, the record supports the granting of Lingelbach's Motion to Suppress. The District Court decision should be reversed.

## V.    <u>Argument</u>

**The District Court did err in concluding that the protective search of the vehicle to secure the firearm was objectively reasonable.**

## A.    Standard of Review and Reviewability

When reviewing a district court's decision on a motion to suppress a Fourth Amendment violation, the court reviews *de novo* a lower court's legal conclusions while reviewing the underlying factual determinations for clear error. *Ornelas v. United States,* 517 U.S. 690, 699 (1996).

**B.** **Argument**

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. Amend. IV. Time and again, the Supreme Court has observed that searches and seizures "conducted outside the official process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions." *Thompson v. Louisiana,* 469 U.S. 17, 19-20 (1984) (*per curium*).

In *Terry,* the United States Supreme Court recognized that a limited stop and frisk of an individual could be conducted without a warrant based on less than probable cause. A *Terry* stop must be predicated on a reasonable, individualized suspicion based on articulable facts that a crime has been committed, is being committed, or is about to be committed. The Supreme Court more recently has required suspicion only of "criminal activity," not necessarily a specific crime. *United States v. Arvizu,* 534 US. 266, 277 (2002). The reasonable suspicion in the instant offense was a noise complaint. The complaint was not regarding a firearm.

13

### 1. The District Court misstated facts, tainting its analysis.

In its order denying Lingelbach's motion the District Court described what happened the night of the frisk:

> Hilde responded to the noise complaint alone and in the middle of the night. He approached the vehicle and was startled to see a weapon sitting on the seat next to Defendant. Hilde knew Defendant was armed and would gain immediate access to the gun upon returning to the car. This strongly favors the reasonability of the search and disarming of the weapon. The presence of a loaded firearm strongly increases the danger of an encounter turning fatal. This supports the conclusion, as articulated in *Orman*, that it was reasonable for the officers to temporarily seize the gun to ensure officer safety during and immediately after the encounter.

(ER-36–37).

The District Court misstated the facts. Although Officer Hilde was alone when he responded to the noise complaint, he was not alone when he searched Lingelbach's vehicle without a warrant. Officer Stroble had arrived in the interim. The district court elides that the purpose of a protective frisk is to ensure officer safety while they investigate, which here was obviated by the fact that Lingelbach had been handcuffed and secured in Officer Hilde's patrol car. Finally, at the time Hilde and Stroble searched Mr. Lingelbach's car, they did not know that he would gain immediate access to the gun upon returning to the car. At the time the car was being searched, they had not completed their check for warrants or convictions. They could not know if Mr. Lingelbach was going to be released or if he was going

to be arrested.  The testimony of Officer Hilde at the suppression hearing was self-serving.  (ER-74).  The record clearly demonstrates that the protective sweep was conducted prior to law enforcement deciding to release Lingelbach.

### 2.  *United States v. Orman*, 486 F.3d 1170 (9th Cir. 2007).

In denying Lingelbach's motion to suppress, the District Court relied principally on *United States v. Orman*, 486 F.3d 1170 (9th Cir. 2007).  *Orman* is easily distinguished and does not control here.

The facts of *Orman* are simple: a public works employee in Phoenix, Arizona observed a man conceal a firearm on his person in the parking lot of a shopping mall, and then enter the mall.  *Id*. at 1171.  The employee reported this activity to mall security and provided a description of the man.  *Id*.  Security, including an off-duty Phoenix police officer, identified a man matching the description and approached him. *Id*. at 1172.  Orman consented to the contact, and when asked if he was carrying a gun, admitted it.  *Id*.  Orman gestured to the gun and mall security seized it.  *Id*. Orman then consented to continue his contact with law enforcement and mall security in the mall security office, where he was ultimately arrested for carrying a concealed weapon.  *Id*.

There are multiple facts and points of analysis which distinguish *Orman* from the instant case.  In *Orman*, the contact between the defendant and law enforcement was entirely consensual.  *Id*. at 1174-1175.  Consensual law enforcement contact

does not implicate the Fourth Amendment. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). The District Court ignored this aspect of *Orman* entirely. (ER-35–37).

Lingelbach's encounter was not consensual. Law enforcement was responding to a noise complaint. (ER-64). When Officer Hilde arrived, there was no noise. He approached Lingelbach and, within less than a minute, handcuffed him and secured him in a police vehicle. (ER-66). Lingelbach's Fourth Amendment rights were center-stage from the beginning of the encounter; in *Orman*, the defendant's Fourth Amendment rights are not implicated at all, because he consented to the encounter.

At the time of Orman's encounter at the mall, Arizona barred the carrying of a concealed weapon without a permit. *Id*. at 1172, n.4, citing Ariz. Rev. Stat. § 13-3102(A). Thus, there was a reason to believe that "criminal activity may be afoot." *Terry*, 392 U.S. at 30. There was no reason to believe that criminal activity was afoot in Lingelbach's case in relation to a firearm. The investigation regarding the noise complaint was abandoned immediately after Officer Hilde saw the gun. (ER-68).

The *Orman* panel identified the seizure of the defendant's gun as a *Terry* search, 486 F.3d at 1176, and noted that "the purpose of a limited protective search for weapons is to allow a police officer to pursue his work without fear of violence[.]" Id., citing *Adams v. Williams*, 407 U.S. 143, 146 (1972). The reasoning

that supports such a "limited protective search" does not apply here, where there was no criminal activity, actual or suspected, for the police to investigate. The police had secured Lingelbach in the patrol car and informed him of the noise complaint. While waiting for more information regarding Lingelbach's probation, parole, and felon status, Officers Hilde and Stroble entered Lingelbach's vehicle and seized the firearm. They had no suspicion of criminal activity. *See, e.g.*, *United States v. Black*, 707 F.3d 531, 540 (4th Cir. 2013) (noting that prohibited possession of a firearm "is not the default status."). In *Orman*, the search for a weapon was directly related to the suspected criminal activity.

The warrantless seizure of Orman's gun was not just based on the threat to officer safety; as the Court noted, "the mall was crowded and at a minimum, [law enforcement] needed to see that the gun was removed from the premises without endangering his safety or the safety of the mall patrons." 486 F.3d at 1177. In contrast, Lingelbach's encounter with law enforcement took place out-of-doors, on residential street, at roughly 2:00 a.m. There were no passers-by; the only individuals present were Officers Hilde and Stroble and Lingelbach.

### 3. *Orman* is out-of-step with the Supreme Court's decisions and this Court's decisions.

*Orman*'s holding, that reasonable suspicion of the presence of a gun is adequate to justify a protective search under *Terry*, has not been relied upon or analyzed in a published case by this or any other circuit court. It is a later Ninth

Circuit case that provides a more thorough, balanced analysis of the *Terry* stop-and-frisk.

In *Thomas v. Dillard*, 818 F.3d 864 (9th Cir. 2016), a 42 U.S.C. § 1983 action, a campus police officer (Dillard) investigating a reported domestic disturbance encountered a student (Thomas) at the scene and questioned him about the disturbance. *Id*. at 875. Dillard requested consent to frisk Thomas, which he refused. *Id*. Dillard than drew his Taser and ordered Thomas to consent to a frisk at Taser-point. *Id*.

The Court noted "whereas a *Terry* stop is justified by reasonable suspicion that criminal activity may be afoot, a frisk of a person for weapons requires reasonable suspicion that a suspect 'is armed and presently dangerous to the officer or to others.'" *Id*. at 876, quoting *Terry*, 392 U.S. at 24. The Court also noted that "'A lawful frisk does not always flow from a justified stop.'" *Id*., quoting *United States v. Thomas*, 863 F.2d 62 (9th Cir. 1988).

> Reasonable suspicion is an objective standard, asking whether "a reasonably prudent [person] would have been warranted in believing [the suspect] was armed and thus presented a threat to the officer's safety while he was investigating his suspicious behavior." *Terry*, 392 U.S. at 28, 88 S.Ct. 1868. This inquiry requires consideration of all the facts and circumstances an officer confronts in the encounter; we consider the totality of the circumstances.

*Dillard*, 818 F.3d at 876. The "totality of the circumstances" must be individualized, *id*. at 877, and includes:

Whether the officer observes anything during an encounter with the suspect that would dispel the officer's suspicions regarding the suspect's potential involvement in a crime or likelihood of being armed, *see Terry*, 392 U.S. at 28, 88 S.Ct. 1868; *United States v. $109,179 in U.S. Currency*, 228 F.3d 1080, 1086 (9th Cir.2000).

This last point is especially important. Even where certain facts might support reasonable suspicion a suspect is armed and dangerous when viewed initially or in isolation, a frisk is not justified when additional or subsequent facts dispel or negate the suspicion. Just as a suspicion must be reasonable and individualized, it must be based on the totality of the circumstances known to the officer.

*Id*.

This level of scrutiny, which requires law enforcement to vigilantly assess the circumstances of an encounter to determine when and if they have reasonable suspicion to perform a frisk is incongruent with *Orman*'s blanket conclusion that "reasonable suspicion that [the suspect] was carrying a gun [] is all that is required for a protective search." *Orman*, 486 F.3d at 1176. *See also*, *United States v. I.E.V.*, 705 F.3d 430, 438 (9th Cir. 2012) ("The fact that an officer had already completed a large portion of his investigation of the vehicle without facing any threatening behavior undermines the 'well-settled ... purpose of a *Terry* stop ... to allow the officer to pursue his investigation without fear of violence.'") (quoting *United States v. Miles*, 247 F.3d 1009, 1012 (9th Cir. 2001)).

The Supreme Court has been clear: there is no "firearm exception" to the Fourth Amendment. *Florida v. J.L.*, 529 U.S. 266, 272-73 (2000). If an individual

19

exercises his Second Amendment rights that individual does not waive his Fourth Amendment rights.

### 4. The district court's extension of *Orman*'s holding implicates the Second Amendment.

*New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111, — U.S. — (2022), marks a dramatic shift in Second Amendment law. Before *Bruen*, courts decided Second Amendment challenges by balancing the strength of the government's interest in firearm regulation against the degree of infringement on the challenger's right to keep and bear arms. *Bruen* rejected that approach, instructing courts, instead, to consider only "constitutional text and history." 142 S.Ct. at 2128-29. If "the Second Amendment's plain text covers an individual's conduct," then under *Bruen*, "the Constitution presumptively protects that conduct." *Id*. at 2129-30. To rebut the presumption, the government must show that a challenged law "is consistent with the Nation's historical tradition of firearm regulation." *Id*. This test is demanding: a firearm regulation is consistent with American tradition only if similar regulations were widespread and commonly accepted in the founding era, when the Second Amendment was adopted. *Id*.

The Second Amendment guarantees: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v.*

*Heller*, the Supreme Court held the Second Amendment constitutionalized a pre-existing individual right to possess and use firearms for lawful purposes like self-defense. 554 U.S. 570, 592, 624 (2008). Based on a survey of the history of the Second Amendment, the Court concluded the right is "not limited to the carrying of arms in a militia." *Id*. at 586. Rather, "the Second Amendment confers an individual right to keep and bear arms" that "belongs to all Americans." *Id*. at 581, 622.

"More importantly, where a state permits individuals to openly carry firearms, the exercise of this right, without more, cannot justify an investigatory detention. Permitting such a justification would eviscerate Fourth Amendment protections for lawfully armed individuals in those states." *Black*, 707 F.3d at 540; *see also United States v. King*, 990 F.2d 1552, 1558-59 (10th Cir. 1993) ("The government's argument […] to allow police officers to seize any citizen whom the officers have any articulable reason to believe presents a threat to their safety. In a state such as New Mexico, which permits persons to lawfully carry firearms, the government's argument would effectively eliminate Fourth Amendment protections for lawfully armed persons."). To accept the District Court's decision in this case, and its extension of *Orman*, implicates the Second Amendment and Fourth Amendment rights of gun-owning Americans.

Every fall, dozens, if not hundreds, of Montanans are stopped for traffic violations while legally possessing firearms. To adopt the District Court's

21

reasoning, police would be justified in seizing and searching any firearm possessed under those circumstances to assure "officer safety."

**C.** **There was no suggestion Lingelbach was armed AND dangerous.**

The District Court analyzed the search of Lingelbach under *Terry* and *Michigan v. Long*, 463 U.S. 1032 (1983). ER CITE. *Terry* announced the Fourth Amendment exception known today as a *Terry* frisk:

> [W]e cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating <u>at close range is armed and presently dangerous to the officer or to others</u>, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

392 U.S. at 24 (emphasis added).

Furthermore, the authority for a *Terry* frisk is "narrowly drawn." *Id*. at 27.

> [T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Id*.

The law has been clear from the beginning: the suspect must be armed *and* dangerous, and the justification is directly related to the present danger and physical proximity of the officer and suspect. *Id*. at 24. Cases relying on *Terry*, including *Long*, confirm those criteria.

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is <u>dangerous and the suspect may gain immediate control of weapons</u>.

*Long*, 463 U.S. at 1050 (emphasis added); id. at 1050, n. 14 ("[W]e require that officers who conduct area searches during investigative detentions must do so only when they have the level of suspicion identified in *Terry*.").

This standard – armed and dangerous, and based on "specific and articulable facts" – remains the standard. It was not met in this case. The District Court was wrong in stating that Lingelbach's approach was too "formulaic." (ER-35).

As briefed *infra*, the district court relied heavily on this Court's decision in *Orman*, which did not follow the Supreme Court's guidance in *Terry* and *Long* when it ignored the "armed and dangerous" standard and created a new, "armed means dangerous" standard. *Long* disfavors this conflation, noting "the area search that we approve is limited to a search for weapons" where "the officers have a reasonable

belief that the suspect", not the weapon, "is potentially dangerous to them." 463

U.S. at 1052, n. 16.

The district court also relied on *United States v. Flatter*, 456 F.3d 1154 (9th

Cir. 2006), but ignored *Flatter*'s application of the *Terry/Long* standard:

> Here, however, officers had absolutely no reason to believe that Flatter was armed. They did not observe any bulges in his clothing. Nothing in Flatter's demeanor aroused the officers' concerns for their safety, or suggested that he might be armed; he did not act in a threatening manner at any time, nor were the officers aware of any past violent conduct. Mail theft by postal employees is not a crime that is frequently associated with weapons, such as robbery or large-scale drug dealing. Nor does the record suggest that Flatter had any idea he was under investigation; he was therefore no more likely to have been armed that day than to have been armed on any other work day. Because the officers had no reason to suspect that Flatter was armed and dangerous, we hold that the pat down violated the Fourth Amendment.

*Id*. at 1158. *Flatter* supports Lingelbach.

The District Court also relied on *Ramirez v. City of Buena Park*, 560 F.3d

1012 (9th Cir. 2009) for the proposition that "[t]he purpose of the protective search

is practical; it allows an officer to pursue his work safely. In other words, it is

grounded in the dangerousness of the situation taken in its entirety." (ER-36).

Despite this precept the District Court did not analyze the totality of the

circumstances, misstating facts about the search. *See supra*. Furthermore, *Ramirez*

also applies the "armed and dangerous" standard from *Terry*. *Ramirez*, 560 F.3d at

1022.

If you describe a way of saying or doing something as "formulaic", you are criticizing it because it is not original and has been used many times before in similar situations. However, in the instant situation, a formulaic approach is correct because after case confirmation: the standard is armed and dangerous, not armed means dangerous. *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993); *Ybarra v. Illinois*, 444 U.S. 85, 93 (1979); *United States v. Holmes*, 376 F.3d 270, 277 (4th Cir. 2004); *Northrup v. City of Toledo Police Department*, 785 F.3d 1128, 1132 (6th Cir. 2015); *United States v. Neely*, 564 F.3d 346, 352 (4th Cir. 2009); *United States v. I.E.V.*, 705 F.3d 430, 435-46 (9th Cir. 2012); *United States v. Thomas*, 863 F.2d 622, 628-29 (9th Cir. 1988).

*Orman*'s implication that the reasonable suspicion of the presence of a firearm is equivalent to a finding of dangerousness is also out of step with cases based on analyzing *Maryland v. Buie*, 494 U.S. 325 (1990), which provides an exception for a protective sweep of a residence, incident to arrest, when there are specific and articulable facts supporting the reasonable suspicion "that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id*. at 334. These cases confirm that the presence of a firearm is not a per se danger. *See United States v. Westberry*, 2020 WL 2079268 *5 (D.N.J. 2020) (collecting cases). Similar holdings exist regarding the "exigent circumstances" exception. *United States v. Gooch*, 6 F.3d 673, 680 (9th Cir. 1993) ("The presence of a firearm alone is not an

exigent circumstance."); *see also*, *United States v. Tatman*, 615 F.Supp.2d 664, 679 (S.D. Ohio 2008) ("The mere presence of firearms in a house does not, in and of itself, create an exigent circumstance justifying a warrantless search. There must also be some 'impending threat to the police or to the public.'") (quoting *United States v. Morgan*, 743 F.2d 1158, 1163 (6th Cir. 1984).

**D.    The Fourth Amendment intrusion was not adequately supported by "the interests of crime prevention and investigation."**

The basis of the *Terry* stop in this case was a noise complaint.  A resident of the neighborhood complained of "a parked pickup truck loudly playing music" at approximately 2:00 a.m.  Officer Hilde was dispatched to the location.  There was no other suggestion of criminal activity beyond the noise complaint.  When Officer Hilde arrived at the scene, there was no music playing or other loud noise.

In *United States v. Grigg*, 498 F.3d 1070 (9th Cir. 2007), the Court considered the reasonableness of a *Terry* stop to investigate a completed misdemeanor identical to the one here: a noise complaint.  The Court ultimately ruled that such an investigation must balance the "personal security from governmental intrusion in the operation of one's vehicle" against the "potential risk to public safety associated with the nature of the offense." *Id*. at 1083.

*Grigg* does not directly address a *Terry* frisk.  But *Grigg* notes that "the gravity of the offense in balancing the interest of crime prevention and investigation

against the interest in privacy and personal security" is a proper consideration when determining the reasonableness of a *Terry* stop. Thus, the Fourth Amendment intrusion becomes increasingly unreasonable as crimes become less severe, do not implicate public safety, and have already been committed. *Grigg* at 1083. That is the case here.

Likewise, *United States v. Hughes*, 517 F.3d 1013 (8th Cir. 2008), is instructive. A Kansas City police officer responded to an apartment complex at 9:30 in the morning to investigate an anonymous complaint of "suspicious parties." *Id*. at 1015. The officer observed three individuals, two of whom matched the complaint about "suspicious parties." *Id*. The officer stopped the individuals for questioning and frisked each of them. *Id*. He found rounds of ammunition in Hughes' pocket. Id. He also performed a computer check on Hughes; it is not clear from the record whether the check was performed before or after the frisk. *Id*.

Hughes moved to suppress, and the district court denied the motion. *Id*. The Eighth Circuit reversed. After reviewing the standards for a *Terry* stop, the Eighth Circuit continued by reviewing the standard for a *Terry* frisk:

> "'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' the officer may conduct a patdown search 'to determine whether the person is in fact carrying a weapon.'" *Dickerson*, 508 U.S. at 373, 113 S.Ct. 2130, quoting *Terry*, 392 U.S. at 24, 88 S.Ct. 1868. There must be articulable and specific facts as to dangerousness. *See Sibron v. New York*, 392 U.S. 40, 64, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) ("In the case of the self-protective

search for weapons, [the officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous."). In determining whether the frisk was justified, this court must look to the totality of the circumstances.

*Id*. at 1016.

The court analyzed the *Terry* stop portion of the encounter first. *Id*. at 1016-17. It concluded that the officer was investigating a completed crime, and that the completed crime was misdemeanor or petty trespass. *Id*. at 1017. The Eighth Circuit noted this Court's adherence to the standard described in *United States v. Hensley*, 469 U.S. 221 (1985), which "balance[s] the individual's interest with the governmental interest on a case-by-case basis." *Id*., *citing Grigg*, 498 F.3d at 1081; *United States v. Moran*, 503 F.3d 1134, 1141 (10th Cir. 2007). The Eighth Circuit found that the government's interest was not met by the completed crime.

> On the facts here, the governmental interest in investigating a previous trespass does not outweigh Hughes's personal interest. Being stopped and frisked on the street is a substantial invasion of an individual's interest to be free from arbitrary interference by police. *See Florida v. J.L.*, 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (describing a stop and frisk at a bus stop as intrusive and embarrassing); *United States v. Wheat*, 278 F.3d 722, 737 (8th Cir.2001) (*Terry* stops of vehicles along public roads are intrusions on an individuals liberty interest, but are considerably less invasive than a "frisk on a public corner"). True, a criminal trespass inherently involves some risk of confrontation with a property owner or lessee, implicating public safety concerns. *See Moran*, 503 F.3d at 1142. Standing alone, this risk is not enough to outweigh the individual's strong security interests. *Cf. id*. at 1143 (finding it important that the risk of confrontation was not

hypothetical because the property owner had previously confronted the trespasser, and "not suggest[ing] that ... any stop based on a completed criminal trespass is per se reasonable").

There may be cases where a *Terry* stop is justified to investigate completed trespass, such as where there is a strong threat to public safety. *See id.* at 1142–43 (*Terry* stop justified where there were multiple reports of the same individual trespassing (two on that particular day), the individual was likely armed as he was trespassing to reach hunting grounds, there were previous confrontations between the trespasser and the property owner, and the trespasser had threatened other local property owners). *Cf. Bates v. Chesterfield County, Va.*, 216 F.3d 367, 371 (4th Cir.2000) (*Terry* stop justified where property owner reported juvenile trespassing, acting weird as if on drugs or dunk, and then running into the woods). There are no facts here, however, indicating such a threat. As the officer testified, Hughes and the other two were not acting suspiciously, and there was no report of any property crime, personal crime, or any weapons. The officer agreed that there was "nothing in Dispatch ... to imply that this may be a dangerous situation."

*Id.* at 1018.

The Eighth Circuit distinguished *Hughes* from *United States v. Arvizu*, 534 U.S. 266 (2002), to explain why the *Terry* stop was not justified. The Eighth Circuit distinguished the *Terry* frisk in *Hughes* from *United States v. Roggeman*, 279 F.3d 573, 578 (8th Cir.2002), noting that the frisk of Hughes took place in the morning, in public, following an unauthorized *Terry* stop, while the *Roggeman* frisk occurred after a justifiable *Terry* stop, at night, in a poorly lit area. The court went on to explain other factors which show why the frisk was unconstitutional:

The government also argues that the frisk was justified because the officer was alone and the call was vague, leaving open the possibility of dangerous situations. Being outnumbered does not justify a frisk where the initial *Terry* stop is not justified. *See Sibron*, 392 U.S. at 64, 88 S.Ct. 1889 ("The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries."). Additionally, the vagueness of the call defeats, rather than supports, a reasonable suspicion that Hughes was armed and dangerous. *See* Terry, 392 U.S. at 21, 88 S.Ct. 1868 (police officers must be able to point to specific and articulable facts).

The district court ruled that the frisk was justified because the officer became aware that Hughes was on supervision and affiliated with a gang. This information can support reasonable suspicion to frisk only if it were received before the frisk. As the timing of the computer check is "not clear," it cannot form the basis of reasonable suspicion. *See Carter v. United States*, 729 F.2d 935, 940 (8th Cir.1984) (burden is on the government to justify warrantless search). Further, the officer testified that the first thing he normally does when he stops individuals is to "have the person place their hands on the vehicle and I pat them down and I frisk them."

*Id*. at 1019.

These *Hughes* factors weigh in Lingelbach's favor: the police were not outnumbered, and even if they were, that is not enough to justify a warrantless search. The initial call gave no indication of dangerousness, and this vagueness cannot be used to support the frisk. And subsequent investigation of Lingelbach, both his conversation with Officer Hilde that took place before the warrantless search and the computer checks that were run on Lingelbach, gave no indication that Lingelbach was dangerous in any way.

*Grigg* and *Hughes* support Lingelbach and illustrate that the balance between the government's interest and the defendant's Fourth Amendment protections swing to the defendant's position as the seriousness of the instant offense abates.  *See also*, *e.g.*, *LaLonde v. County of Riverside*, 204 F.3d 947, 956 (9th Cir. 2000) ("[T]he Supreme Court has explained that a misdemeanor will seldom, if ever, justify a warrantless entry into the home") (citing *Welsh v. Wisconsin*, 466 U.S. 740, 752-53 (1984)).

## VI.  <u>Conclusion</u>

Given the totality of the circumstances, the protective search was not objectively reasonable and in violation of the Fourth Amendment.  The District Court should be reversed and remanded.

Dated this 20th day of June, 2023.

/s/ Steven C. Babcock
STEVEN C. BABCOCK
Assistant Federal Defender
Federal Defenders of Montana
            Counsel for Defendant-Appellant

## <u>STATEMENT OF RELATED CASES</u>

The undersigned, Counsel of record for the Petitioner-Appellant, pursuant to

Rule 28-2.6 of the Rules of the United States Court of Appeals for the Ninth

Circuit, states that upon information and belief there are no related cases pending

before this Court.

RESPECTFULLY submitted this 20th day of June, 2023.

/s/ Steven C. Babcock
STEVEN C. BABCOCK
Assistant Federal Defender
Federal Defenders of Montana
  Counsel for Defendant-Appellant

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this Opening Brief of Petitioner-Appellant follows

Ninth Circuit Rule 32(a). The Brief's line spacing is double spaced.  The brief is

proportionately spaced, the body of the argument has a Century typeface, 14-point

size and contains less than 14,000 words at an average of 280 words (or less) per

page, including footnotes and quotations. (Total number of words: 5,679 excluding

tables and certificates).

DATED this 20th day of June, 2023.

/s/ Steven C. Babcock
STEVEN C. BABCOCK
Assistant Federal Defender
Federal Defenders of Montana
   Counsel for Defendant-Appellant

# CERTIFICATE OF SERVICE
## Fed.R.App.P.25

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party carrier for delivery within 3 calendar days, to the following non-CM/ECF participant.

TYSON DANIEL LINGELBACH
518 2nd Avenue
Laurel, Montana 59044

RESPECTFULLY submitted this 20th day of June, 2023.

/s/ Steven C. Babcock
STEVEN C. BABCOCK
Assistant Federal Defender
Federal Defenders of Montana
Counsel for Defendant-Appellant